### Eddie Atchison v. The State.

#### No. 7562.   Decided April 11, 1923.

**Rape—Continuance—Insanity—Practice on Appeal.**

> Where, upon trial of rape by force, the defendant pleaded insanity and filed an application for continuance in which he showed that material witnesses including his mother, and knowing condition of defendant's mind where unavoidably absent and by whom he could prove insanity, the trial court should have granted a continuance in the light of the facts revealed upon the trial, and the judgment is reversed and the cause is remanded.

Appeal from the District Court of Bosque.   Tried below before the Hon. Irvin T. Ward.

Appeal from a conviction of rape; penalty, fifty years imprisonment in the penitentiary.·

The opinion states the case.

*O. L. Lockett* for appellant, cited Roberts v. State, 150 S. W. Rep., 625.

*R. G. Storey,* Assistant Attorney General, for the State, cited Touwsaint v. State, 244 S. W. Rep., 514.·

MORROW, Presiding Judge.—The offense is rape by force; punishment fixed at confinement in the penitentiary for a period of fifty years.

·According to the State's theory and testimony, the appellant, a young man about twenty years of age, requested permission to take the prosecutrix, a girl about eighteen years old; home from church in his automobile. Instead of going directly home he, over her protest, drove out on a country road for some distance. They. conversed agreeably upon this trip and ultimately appellant turned his car ·in the direction of her home. He stopped the car ostensibly to see about the gasoline. While the car was standing, he put his arm around the prosecutrix against her will and tried to persuade her to get out of the car. He eventually got out of the car and pulled her out. He then endeavored to persuade her to submit his embraces and finally forced her to do so. Afterwards the two got in the car and drove to the home of the prosecutrix. The mother of the prosecutrix was waiting for her and was by the prosecutrix informed of the outrage.

Examinations of the girl by physicians and an examination of her clothing corroborated her with reference to the fact that the intercourse had taken place. There was a cross-examination of the prosecutrix in which there was drawn from her some admissions which appellant's counsel contend suggested the theory of consent, and upon that issue the court instructed the jury in a special charge prepared by the appellant.

The defense was insanity. The trial took place twelve days after the indictment was found. The uncle of the appellant testified that there was insanity in the family; that about four years antecedent to the date of the offense, appellant had a severe attack of illness called influenza; that at the same time four of his brothers and sisters died, and the recovery of appellant was unexpected; that during the illness, which was protracted, he was delirious; that it was several months before he was able to be up; that the illness left his mind impaired. It was also shown that appellant had a severe attack of typhoid fever and thereafter was treated for a nervous breakdown. For that malady he was treated by Doctor Oxford, a regular physician of experience, who had treated appellant for more than a year, and that he was also under the treatment of Doctor Breeding for some forty days. Appellant's sickness lasted for six months and was followed by a mental breakdown. Prior to these periods of sickness he was bright and tractable. Thereafter there was a marked change in his disposition. He was disobedient and got into various kinds of trouble which the witness described. The father of appellant also, also a neighbor who knew him, gave testimony along the same general lines and related various instances upon which they predicated their opinion that the condition of appellant's mind was such as rendered him incapable of distinguishing between the right and wrong with reference to the act in question.

Before going to trial, appellant made a motion for a continuance, embracing the absence of three witnesses. First, the mother of appellant, who at the time was sick and had been confined to her bed for some days and was at a point five hundred miles distant from the place of the trial, and according to the uncontroverted affidavits attached to the motion for a continuance and motion for new trial, and according to the testimony given upon the trial, her condition was such as to render it out of the question for her to have been present even if she had been subpœnaed. She was in a very nervous condition and owing to the impossibility of securing her attendance, no subpœnaed had been served upon her.

Doctor Oxford, by whom appellant expected to prove the treatment of which mention has been made and from whose testimony he expected to show that appellant's mental condition was such as rendered him incapable of comprehending the wrong of the offense of which he is charged, was also absent at the time of the trial.

Doctor Oxford resided in an adjoining county and had been duly served with process but was shown to have been confined to his bed with rheumatism and was unable to attend the trial.

Doctor Breeding, who had also been summoned and duly subpœnaed, resided in San Antonio, Texas. He was also a physician of experience and a graduate of several schools of medicine. He had treated appellant subsequent to the attacks of illness mentioned and had continued to prescribe for him up to a date nearly approaching that of the offense. By this witness, he expected also to prove that appellant's mental condition was, when last seen by the witness, precarious, and that his mind was unnatural; that he was erratic; that he acted without deliberation and was in a dangerous condition of mind.

The mother of the appellant, according to the averments in the motion and the affidavit of her husband would have testified to her close attendance upon the appellant during the various attacks of illness mentioned and to the various instances indicating that his mind was not sound, and supporting the opinion which she would give to the effect that his mind was unsound to a degree rendering him incapable of distinguishing between right and wrong.

The motion for a continuance was overruled on the 3rd day of October. The court adjourned on the 7th day of that month, and the absence of the affidavit of appellant's mother and that of Doctor Breeding is accounted for by the fact that the time after the termination of the trial and before the adjournment of court was not sufficient within which to procure the affidavits. This was the first application for a continuance. We discern no lack of diligence in the effort to procure the testimony of the physicians. they were both served with process. Neither was absent by the procurement of the consent of the appellant. One of them was sick. The absence of the other was not explained, but there is no suspicion thrown upon the fact that he did not attend. The mother was not subpœnaed, but her condition, according to the undisputed evidence, was such that no diligence would have procured her attendance at the trial. See Bosley v. State, 86 Texas Crim. Rep., 619, 218 S. W. Rep. 750. It was revealed on the hearing that there were no other physicians save those named in the application by whom the appellant could prove the same facts that he expected to ascertain from them. He was tried without medical witnesses. The physicians named in the application had, according to the averments, personal knowledge of his condition, which they had gained from long and continued acquaintance and treatment of the appellant. Their testimony would have been of peculiar value. See Roberts v. State, 67 Texas Crim. Rep., 520, 150 S. W. Rep. 629. The application being the first one, the general rule with reference to cumulative testimony is not applicable. See Byrd v. State, 89 Texas Crim. Rep., 371, 231 S. W.

Rep. 399. Moreover, the rule is more liberal in cases where the defense is insanity. Webb v. State, 5 Texas Crim. App. 608.

The application for a continuance fully complied with the law and related to material testimony, and viewed in the light of the facts revealed upon the trial, the absence of the witnesses should have impelled the learned judge who tried the case to grant a new trial.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*