590 S.W.2d 820 (1979)
D. L. N., Appellant,
v.
The STATE of Texas, Appellee.
No. 20106.
Court of Civil Appeals of Texas, Dallas.
November 21, 1979.
*821 Herbert Green, Jr., Dallas, for appellant.
Henry Wade, Dist. Atty., Maridell J. Templeton, Asst. Dist. Atty., Dallas, for appellee.
Before GUITTARD, C. J., and AKIN and ROBERTSON, JJ.
GUITTARD, Chief Justice.
Appellant, a fifteen-year-old boy, was found by a jury to have engaged in deviate sexual intercourse with a three-year-old girl and was placed on probation by the juvenile court. He complains on this appeal that he was denied a fair trial because of improper admission of evidence, that the evidence is insufficient to support the verdict, and that the only eye-witness, an eight-year-old child, was incompetent to testify. We hold that the witness was competent, but we conclude that appellant was prejudiced by improper evidence. Consequently, we reverse and remand for a new trial.
Appellant's first point of error is multifarious and too general since it complains merely that the court erred in failing to give appellant a fair trial. On looking at the discussion under this point, however, we find several instances in which clearly prejudicial evidence was presented to the jury and that the cumulative effect of this evidence was such as to deny appellant a fair trial.
The first of these instances was the testimony of the little girl's mother. She testified that she had heard the child sing a song indicating that she had participated in an oral sex act. Appellant's objection to this testimony as hearsay was overruled. Over further objection, the mother testified that she questioned the child about the matter and the child replied "that it was in his zipper. It was in his britches." Appellant's objection to this evidence was sustained, and the court instructed the jury to disregard the answer, but overruled appellant's motion for mistrial.
The mother further testified that after discussing the matter with the child's father, they decided to arrange a meeting with appellant's mother, and they asked *822 that the minister of appellant's family be present. Appellant objected to evidence of the meeting as being hearsay and also as "irrelevant, immaterial, inconsequential, and after the fact." After these objections were overruled, the girl's mother testified that the meeting took place and named the persons present.
The girl's father also testified concerning the meeting. He said that the child was present and that he and others asked her questions. At this point appellant's hearsay objection was overruled. The father then testified that he asked the child to demonstrate what had happened, and she responded by pulling up her dress and saying "He kissed me right there." When asked what he made her do, she went over to appellant, put her head in his lap and tried to undo his pants. After this testimony was given, appellant's counsel objected that the scene "took place somewhere else," that the child was forced to do something by her father, that nobody was under oath, and took place outside the courtroom, and asked the court to instruct the jury to disregard the evidence. These objections were overruled.
The minister in question was also called to testify. Without any objection other than that there was "no proper predicate" and that the people at the meeting were not sworn, the minister testified concerning what happened at the meeting, including the demonstration by the child. On cross-examination, appellant's counsel brought out the same testimony again.
On redirect examination the minister was asked whether the responses of the little girl at the meeting were appropriate for a child of her age. Over appellant's objection that this question called for a conclusion of the witness and that the witness was not qualified as an expert, the minister was permitted to testify that he was "quite shocked" at her reactions and performance. The court overruled appellant's objection that the answer was not responsive.
Another witness called by the state was a police officer of the city of Dallas, who testified that he was an investigator in the child-abuse section. He testified that appellant was the suspect in the case, and that he had talked to the little girl, her mother and other relatives. When asked what investigative steps he took other than talking to witnesses, he replied that appellant was given a polygraph test. Appellant objected and moved for a mistrial on the ground that the witness had "said the magic word polygraph." The objection and motion were overruled. The officer was further permitted to testify, over appellant's hearsay objection, that as a result of his investigation he had filed a charge of "indecency with a child" against appellant.
None of the foregoing evidence, in our view, was competent to prove the delinquent conduct alleged, since all of it (except that concerning the polygraph test) depended on assertions by the child and conduct by her that was interpreted by her parents and others as indicating what had occurred between her and appellant. As such, it was clearly hearsay, and was not within any exception to the hearsay rule. Byrd v. State, 89 Tex.Cr.R. 371, 231 S.W. 399 (1921) (testimony that complainant had pointed out defendant). Although a hearsay statement by a small child may be admitted as res gestae, the usual requirements of res gestae declarations must be shown, such as a spontaneous utterance made under the immediate influence of an exciting event. City of Houston v. Quinones, 142 Tex. 282, 177 S.W.2d 259, 262-63 (1944); Bennett v. State, 382 S.W.2d 930, 931 (Tex.Cr.App.1964); Oldham v. State, 167 Tex.Cr.R. 644, 322 S.W.2d 616, 619 (1959). Those requirements were not met in this case.
There can be no pretense here that the evidence was admissible for some purpose other than to prove the delinquent conduct alleged, such as to explain the actions of the child's parents after the event. Those actions are immaterial to the only material issue, namely, the alleged delinquent conduct itself. The obvious purpose of presenting this incompetent evidence was to convince the jury that the alleged delinquent conduct occurred by showing that the child's parents and the police investigator *823 believed, and had good reason to believe, that it occurred. Because of the highly prejudicial nature of this incompetent evidence, it cannot be dismissed as harmless. We recognize the difficulty of obtaining competent evidence in a case involving abuse of a small child. Nevertheless, we know of no exception to the rule that an adjudication of delinquency, like a conviction of crime, must be based on competent evidence. The Family Code expressly provides that at an adjudication hearing, only material, relevant, and competent evidence may be considered. Tex.Fam. Code Ann. § 54.03(d) (Vernon 1975).
The state contends that even if the evidence above recited was incompetent, appellant cannot complain because he failed to make proper objections to some of it and he went into the same matters himself on cross-examination. After reading this record, we are convinced that appellant should not be held to have waived the incompetency of this evidence because of the inadequacy of his counsel's objections. Repeated objections to the hearsay were made; some were sustained and others overruled. Several motions for mistrial were made and overruled. Failure to repeat objections to similar evidence may not be a waiver when previous objections have been overruled. Brown v. Masco Corp., 576 S.W.2d 105, 107 (Tex.Civ.App.Beaumont 1978, writ ref'd n. r. e.); Crispi v. Emmott, 337 S.W.2d 314, 318 (Tex.Civ.App.Houston 1960, no writ). Neither is an objection waived by cross-examination concerning matters previously admitted over objection. Roosth & Genecov Production Co. v. White, 152 Tex. 619, 262 S.W.2d 99, 104 (1953).
Perhaps the most damaging incompetent evidence was that of the police officer. He was not a witness to the alleged delinquent conduct, and the only apparent purpose of his testimony was to convince the jury that his investigation had led him to believe that appellant was guilty. Of course, his investigation, based on hearsay, was not competent to prove the act charged. Although the officer did not state the result of the polygraph test, the inference for the jury to draw was clear, since the officer testified that he filed the charge after appellant took the test. His testimony about the test was given in direct response to a question by the prosecutor inquiring what investigative steps he took other than talking to witnesses. Thus, the record shows a deliberate strategem by the prosecutor to get before the jury a highly prejudicial item of evidence known to be incompetent. This incident in itself constituted reversible error under criminal justice standards. Nichols v. State, 378 S.W.2d 335, 336-38 (Tex.Cr. App.1964); see Reed v. State, 522 S.W.2d 466, 467-70 (Tex.Cr.App.1975). We see no reason to apply a different standard to a juvenile.
We regard as inapplicable those decisions holding that a statement concerning a polygraph test may not be reversible error if made in an unresponsive answer to a question calculated in good faith to elicit proper testimony, and the court gives an adequate instruction to disregard the statement. Renesto v. State, 452 S.W.2d 498, 500 (Tex.Cr.App.1970); Roper v. State, 375 S.W.2d 454, 456-57 (Tex.Cr.App.1964). In this case the objection and the motion for mistrial were both overruled. The objection may have been inartful, but it was sufficient to convey to the court the idea that the word "polygraph" was inflammatory and prejudicial. We conclude that no further objection was required because an objection would only have drawn the jury's attention to the prejudicial evidence and no instructions by the court could have removed its harmful effect. Nichols v. State, 378 S.W.2d 335, 338 (Tex.Cr.App.1964).
In view of the admission of all this incompetent and prejudicial evidence, we sustain appellant's first point complaining that the court erred in failing to give him a fair trial. The specific evidence complained of under this point is the hearsay testimony of the child's mother, the hearsay testimony of the father, the hearsay testimony of the minister, and the officer's testimony that appellant was given a polygraph test before the charge was filed against him. Since there is no suggestion here of even a tenuous *824 theory on which any of this evidence might be admissible, we can only conclude that appellant is correct in asserting that the record demonstrates a conscious attempt by the prosecutor to secure a delinquency adjudication on the basis of incompetent evidence. We reverse the case because of the trial court's error in permitting the case to be tried in this manner.
Appellant complains in his second point that the evidence is insufficient to convict appellant of the delinquent conduct alleged. This point is closely related to the third, which complains that the court erred in permitting an eight-year-old child, who purported to be an eye-witness, to testify concerning what she had seen.
We cannot say that the judge abused his discretion in permitting the child to testify. Although she may not have fully understood the nature and obligation of an oath, and she equivocated in her statements about whether she would be punished if she lied, her statements were sufficient to justify the judge in concluding that she knew truth from falsehood and understood that she had an obligation to tell the truth. Consequently, we hold that her testimony was properly admitted. See Provost v. State, 514 S.W.2d 269, 270 (Tex. Cr.App.1974); Fields v. State, 500 S.W.2d 500, 502-03 (Tex.Cr.App.1973).
Whether this testimony is sufficient to support the verdict is a more difficult question. The witness testified that she saw appellant licking the little girl between the legs, but she did not mention the act of oral sex by the child which the other witnesses said had been related to them.
There was one other item of admissible evidence, namely, testimony by a fourteen-year-old brother of the little girl that appellant had made statements to him indicating that appellant had engaged in deviate sex acts with the child, but without specifying the times or places. Whether these two items of admissible evidence would have been sufficient to convince the jury in the absence of the incompetent evidence in this record is a matter of speculation. Apparently, the prosecutor concluded that corroboration was necessary. It seems likely to us that the incompetent evidence may have had more weight with the jury than the two items of evidence that were admissible. Certainly, we cannot say that the admissible testimony was so strong that the incompetent evidence was merely cumulative and probably did not influence the jury. Consequently, we reverse the judgment and remand for a new trial.
Reversed and remanded.